**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**BEAUFORT DIVISION**

| | | |
|---|---|---|
| AMBER ALLEN,<br>LAUREN JUAREZ, and<br>BETSY GRAY, on behalf of<br>themselves and all others<br>similarly situated<br><br>Plaintiffs,<br><br>vs.<br><br>PRO DISPOSAL USA, LLC<br><br>Defendant. | } } } } } } } } } } } } } } } | Case No.    9:26-cv-01012-DCN<br><br><br>**CLASS ACTION COMPLAINT**<br>**JURY DEMAND** |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

### INTRODUCTION

1.      Plaintiffs bring this class action against Defendant Pro Disposal USA, LLC (hereinafter "Defendant"), which upon information and belief owns, operates, and maintains the Barnwell Resources Landfill, located at 490 Brickyard Point Road, Beaufort County, South Carolina (the "Landfill").

2.      Through its ownership, operation, and maintenance of the Landfill, Defendant has released, and continues to release, substantial and unreasonable noxious odors that repeatedly invade Plaintiffs' private residential properties, and those of their similarly situated neighbors, causing property damages through private nuisance and public nuisance.

### PARTIES

3.      At all times relevant hereto, Plaintiff Amber Allen has been a citizen of South Carolina and has owned and resided at a home located at 53 Telfair Drive, Beaufort, South Carolina. Plaintiff Allen brings this action to recover all damages permitted by law on behalf of

herself individually and on behalf of all others similarly situated.

4.      At all times relevant hereto, Plaintiff Lauren Juarez has been a citizen of South Carolina and has owned and resided at a home located at 38 Marsh Drive, Lady's Island, South Carolina. Plaintiff Juarez brings this action to recover all damages permitted by law on behalf of herself individually and on behalf of all others similarly situated.

5.      At all times relevant hereto, Plaintiff Betsy Gray has been a citizen of South Carolina and has owned and resided at a home located at 18 Walnut Hill Street, Beaufort, South Carolina. Plaintiff Gray brings this action to recover all damages permitted by law on behalf of herself individually and on behalf of all others similarly situated.

6.      Defendant and its agents, including its parent(s) and any subsidiaries, has at all times relevant hereto owned, designed, operated, and/or maintained the Landfill located at 490 Brickyard Point Road, Beaufort County, South Carolina.

7.      Defendant Pro Disposal USA, LLC is a foreign limited liability company organized under the laws of Delaware, registered to do business in South Carolina and identified by South Carolina Department of Environmental Services (SCDES) and other public sources as an owner, operator, permit-holder, and/or entity exercising control over the Landfill.

8.      Defendant may be served through its registered agent located at 100 Coastal Drive, Suite 210, Charleston, South Carolina 29492.

**<u>JURISDICTION AND VENUE</u>**

9.      Plaintiffs are citizens of South Carolina.

10.      Upon information and belief, Defendant is a citizen of Florida, where its LLC members are citizens, and Defendant is not a citizen of South Carolina because none of its members are citizens of South Carolina.

11.      This action seeks recovery for harm to the Plaintiffs' and Class's real property

located in Beaufort County, South Carolina, resulting from the Defendant's wrongful and tortious actions and omissions, which occurred at and around the Landfill in Beaufort County, South Carolina.

12.     This Court has original jurisdiction under 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000, exclusive of interests and costs, and there is complete diversity of citizenship between the parties.

13.     Separately, and in addition to diversity jurisdiction under 28 U.S.C. § 1332(a)(1), this Court has jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). CAFA jurisdiction is appropriate because there are 100 or more Class Members and the aggregate amount in controversy exceeds five million dollars ($5,000,000.00), exclusive of interest and costs, and one or more members of the putative class are citizens of a state different from any defendant.

14.     The Court has personal jurisdiction over Defendant, who has sufficient minimum contacts with the State of South Carolina, because it regularly conducts business in South Carolina through its ownership and operation of the Landfill and Plaintiffs' claims arise through such contacts with the forum state.

15.     Exercising personal jurisdiction over Defendant for its contacts satisfies due process and does not offend traditional notions of fair play and substantial justice because Defendant has purposefully availed itself of the laws of the State of South Carolina and it benefits by regularly conducting business through its industrial operations in the state.

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events or omissions giving rise to Plaintiffs' claims took place in this judicial District, and because the property that is the subject of this action is situated in this judicial District.

## FACTUAL ALLEGATIONS

17.     Defendant is the permitted entity that owns, operates, and maintains the Landfill on a 57.3-acre landfilling area, where it receives significant quantities of construction and demolition debris for landfilling and disposal.

18.     Defendant's Landfill disposes of over a hundred thousand tons of waste annually.

19.     Defendant's Landfill is surrounded by residential properties.

20.     Plaintiffs each reside within 2 miles of the Landfill.

21.     On frequent, recurrent, and continuing occasions too numerous to list individually, Plaintiffs' properties have been and continue to be physically invaded by noxious odors.

22.     The noxious odors which entered Plaintiffs' properties originated from Defendant's Landfill, as a result of Defendant's intentional, unreasonable, and/or negligent acts and/or omissions.

23.     The odors caused by the Landfill have been and continue to be dispersed across public and private land throughout the Class Area.

### *Defendant's Landfill Operations*

24.     Defendant's Landfill accepts Class 2 wastes, including construction debris, demolition debris, land-clearing debris, wood, box springs and mattresses, packaging materials, glass, and shingles. Among the construction waste received at Defendant's Landfill are significant quantities of gypsum-containing materials, such as drywall, wallboard, and sheetrock.

25.     Materials deposited into Defendant's Landfill decompose and generate (among other things) Landfill gas, an odorous and offensive byproduct of decomposition which generally consists of methane, hydrogen sulfide, carbon dioxide, and various odorous compounds.

26.     Hydrogen sulfide present in landfill gas can be detected as noxious odors at very low concentrations of only 0.5 parts per billion.

4

27.     Landfill gas from landfills that accept construction and demolition debris, like Defendant's, can be especially odiferous given the high content of hydrogen sulfide, which is known to have a characteristic "rotten-egg" smell.

28.     Hydrogen sulfide is produced at Defendant's Landfill through the breakdown or organic matter and/or the breakdown of gypsum-containing materials, including but not limited to drywall, wallboard, and sheetrock, which becomes saturated under anaerobic conditions, causing sulfate-reducing bacteria to thrive and produce hydrogen sulfide.

29.     A properly operated, maintained, and managed landfill will collect, capture and destroy landfill gas from the landfill to prevent it from escaping into the ambient air as fugitive emissions.

30.     Landfill gas may be collected and processed through a system of wells and pipes, in addition to blowers, flares, and/or vacuums at the landfill. This landfill gas may be later flared or processed into energy through a variety of treatment systems.

31.     Defendant's Landfill operations produce large quantities of leachate, a highly odiferous liquid comprised of liquid waste from materials received at the Landfill. If not properly treated and contained, this leachate can generate and emit noxious odors beyond the Landfill's property boundary.

32.     Leachate forms when wastes filter rainwater, whereby the rainwater draws out or leaches the wastes of chemicals and other noxious constituents.

33.     A properly operated, maintained, and managed landfill will collect, capture, and safely dispose of leachate through a leachate drainage, collection, and removal system.

34.     A properly operated, maintained, and managed landfill will utilize a system of sumps and pipes to pump out and remove leachate so that the leachate may be properly routed,

treated, and disposed. Leachate management is key to reducing the probability of landfill gas production.

35.     A properly operated, maintained, and managed landfill will implement adequate daily cover practices to reduce leachate formation, prevent water infiltration, prevent fugitive odor emissions, and mitigate landfill gas emissions.

36.     Daily cover involves covering the working face of the landfill where waste is actively unloaded with soil or similar alternative materials.

37.     A properly operated, maintained, and managed landfill will control the size of its working face so that it may implement adequate daily cover and mitigate landfill gas emissions.

38.     Defendant is required to control its odorous emissions by, among other things, following proper landfilling practices, utilizing adequate landfill cover and covering practices, utilizing adequate lining and lining practices, limiting and/or pre-treating biosolid waste, utilizing odor control technologies, utilizing stormwater management techniques, and installing, operating, maintaining systems for the routing, capture, removal, and elimination of leachate and landfill gas.

39.     Defendant has failed to implement an adequate leachate and stormwater drainage, collection, and removal system in its Landfill that properly lines, covers, routes, captures, and disposes of leachate.

40.     Upon information and belief, Defendant's Landfill has failed to utilize a landfill gas collection system at all, or has not otherwise implemented an adequate landfill gas collection system, including systems for preventing excess landfill gas from escaping into the ambient air as odorous emissions, such as through a landfill gas flaring system.

41.     Defendant has failed to implement adequate landfill covering and wastewater management practices at its Landfill that adequately mitigates fugitive odor emissions, leachate formation, water infiltration, and landfill gas emissions.

42.     Defendant's odor emissions are abatable with reasonable care and diligence by implementing reasonable emission control systems and by following proper landfilling practices and procedures. Unfortunately, Defendant has failed to exercise reasonable care and diligence in its design, operation, and maintenance of the Landfill, and Defendant's odor emissions have not been abated.

***Defendant's Noxious Odor Emissions***

43.     Defendant has failed to follow proper Landfilling practices to prevent noxious off-site odor emissions and has failed to sufficiently collect, capture, and destroy Landfill gas and/or leachate generated at its Landfill to prevent fugitive emissions, and to otherwise prevent odors from the Landfill from invading the homes and properties of Plaintiffs and the Class.

44.     Defendant's Landfill emissions have been the subject of numerous and frequent odor complaints from residents in the nearby residential area.

45.     In response to the frequent odor complaints and confirmed regulatory violations for failing to control its odorous emissions, SCDES initiated an investigation into Defendant's Landfill in November 2025.

46.     During its investigation, SCDES installed two hydrogen sulfide monitors, one placed on the southwest portion of Defendant's Landfill and one off-site in the community south of the Landfill. SCDES also monitored weather data and analyzed the number of complaints reported from the community to assess whether Defendant's hydrogen sulfide emissions were the source of odor complaints in the community.

47.     During the short period from November 12, 2025 to January 6, 2026, SCDES received at least 425 odor complaints from the Telfair community regarding Defendant's Landfill

48. The 425 complaints from the Telfair community surrounding Defendant's Landfill are correlated with increased peak levels of hydrogen sulfide recorded by SCDES during its investigation and monitoring period.

49. For example, on January 13, 2026 alone, SCDES received almost 80 odor complaints over a single day, corresponding to a higher level of hydrogen sulfide emitted from Defendant's Landfill during the monitoring period. On this date, SCDES' off-site community hydrogen sulfide monitor recorded sustained hydrogen sulfide levels, well in excess of 50 parts per billion.

50. Below is a very small sample of complaints SCDES has received from residents related to Defendant's Landfill:

    a) On March 14, 2024, a local resident reported that "over the past week or so, in the mornings, there has been a horrible and very strong sewage smell permeating my entire neighborhood. I assume it is coming from a landfill, but I never notice any problems until recently. It has gotten so bad that I can't sit outside or work in my yard. It even permeates my car when my windows are closed and seeps into my house."

    b) On January 6, 2025, a local resident reported that "For the past 8-12 months, there is a noxious odor for about a mile along the drive down Middle Road and Brickyard Road near a large solid waste disposal company, Barnwell Resources. (490 Brickyard Point Road South, Lady's Island - Beaufort, SC). Each day, hundreds of residents must experience this strong, extremely unpleasant odor as they drive these roads to school and work, and then back home. This area of Lady's Island also includes several neighborhoods where families must endure this 24 hours a day."

    c) On August 24, 2025, a local resident reported "a sulfur smell which seeps in to the homes and vehicles causing an awful smell to linger for days."

51. As of this filing, more than 40 households have contacted Plaintiffs' counsel documenting the odors they attribute to the Defendant's Landfill.

52. Below is a small sampling of the factual allegations made by Plaintiffs and putative class members to Plaintiffs' counsel, demonstrating that the Landfill is the source and cause of the

odor emissions, which have caused interference with the use, enjoyment, and values of neighboring residential properties.

a) Plaintiff Amber Allen reported that "[t]he odors have caused so much discomfort inside my home. At random hours. The smell permeates inside causing upset stomach [and] stuffed nose, as well as causing near vomiting due to strength of odor." Plaintiff believes that Defendant's repeated odor emissions, have caused adverse impacts on the value of her home.

b) Plaintiff Lauren Juarez reported that she is "[u]nable to play outside with my two children. It is embarrassing when guests come over. Can not hang dry my clothes outside." Plaintiff believes that Defendant's repeated odor emissions, have caused adverse impacts on the value of her home.

c) Plaintiff Betsy Gray indicated that "The odor smells so bad like rotten eggs. The odor is so bad it takes over the inside [and] outside of my home, gives me headaches [and] congestion, trouble sleeping. Makes me feel sick to my stomach all hours." Plaintiff believes that Defendant's repeated odor emissions, have caused adverse impacts on the value of her home.

d) Putative Class Member Cindy Landa reported that "the smell has been so strong that it has woken us up multiple times during the night, leaving us feeling nauseous and causing me to have migraines. The odor lingers for hours making our home and cars smell long after the exposure. We are a family who spends a lot of time outside and the odor has made it difficult to be outdoors at our own home."

e) Putative Class Members Carol and Michael Sykes indicated that they "can't open windows[,] can't sit on front porch[,]" and that it "smells like septic/rotten eggs."

53.     Defendant's well documented pattern of failing to control its emissions is further demonstrated by an extensive administrative record replete with violations that has repeatedly confirmed the Landfill as the source of the odors and identified multiple operational shortcomings that caused Defendant's odor emissions. These independent findings by state regulators confirming the off-site emissions of odors from Defendant's Landfill include, but are not limited to, the following:

a.     On October 20, 2023, an inspection by SCDES cited Defendant for failure to control its odors.

b.  On January 24, 2024, an inspection by SCDES cited Defendant for failure to control its odors.

c.  On February 23, 2024, an inspection by SCDES cited Defendant for failure to control its odors.

d.  On March 27, 2024, an inspection by SCDES cited Defendant for failure to control its odors.

e.  On April 9, 2024, an inspection by SCDES cited Defendant for failure to control its odors. The report stated "Odor detected at Middle Road and Walnut Hill Street and slight odor detected on disposal area." Furthermore, the report indicated that Defendant was notified about daily H2S readings and that if more complaints were received an H2S study would be required.

f.  On June 25, 2024, an inspection by SCDES cited Defendant for failure to control its odors. The report stated that "Inspector detected off site odors on Middle Road near Walnut Hill Street."

g.  On July 25, 2024, an inspection by SCDES cited Defendant for failure to control its odors. The report stated that "H2S odor was detected on site near the side slope nearest to Middle Road. Odor was also detected offsite on Middle Road." The inspection provided a corrective action date of August 1, 2024, to stabilize the Landfill's side slope where odor was detected.

h.  On August 12, 2024, an inspection by SCDES cited Defendant for failure to control its odors. The report stated that "H2S was detected on the disposal area and on the side slopes. Operator is actively repairing the wash outs and rills. The operator plans to hydroseed the area again to stabilize the side slopes." The inspection provided a corrective action date by September 16, 2024 to stabilize the Landfill's side slope where odor was detected and to cover the working face of the Landfill.

i.  On August 29, 2024, a complaint inspection by SCDES cited Defendant for violating South Carolina Solid Waste and Management Act, §44-96-10 *et seq*. The report further stated that "Inspector detected off site H2S odors on Middle Road and Brickyard Point Road South. On site H2S odor was detected at the scale house. Inspector observed small washouts on the side slopes nearest to middle road."

j.  On October 23, 2024, an inspection by SCDES cited Defendant for failure to control its odors. The report stated:

> "Strong H2S Odor was detected at the top of the landfill. A slight odor was detected on the back slope of the working face. Strong odor was detected on Middle Road between Walnut Hill and Ardmore. This has been the source of many odor complaints coming from the surrounding community."

10

k.  On November 11, 2024, an inspection by SCDES cited Defendant for failure to control its odors. The report stated that "Inspector detected H2S odor along Middle Road and at scale house." The Landfill site manager, Maci Dean, stated that he believed the odor was emanating from the south end of the landfill. The report set a corrective action date of December 20, 2024 to cover and mitigate H2S odors.

l.  On December 20, 2024, an inspection by SCDES cited Defendant for failure to control its odors. The report stated that "Inspector detected H2S odor on Middle Road about 300 feet from Walnut Hill, and onsite on side slopes nearest to Middle Road." The report set a corrective action date for January 20, 2025 and asked Defendant to identify the source of H2S odor.

m.  On January 7, 2025, a complaint investigation by SCDES reported that multiple areas surrounding Defendant's Landfill detected a H2S odor. The investigation stated: "Inspector rode and walked along Middle Road today (1/7/2025) and detected a slight H2S odor at Walnut Hill Development...drove along Ardmore and detected a slight H2S odor at Flora Circle...Inspector also detected H2S odor on perimeter road of landfill." The investigation determined that Defendant's landfill violated South Carolina Solid Waste and Management Act, §44-96-10 *et seq*.

n.  On January 27, 2025, an inspection by SCDES cited Defendant for failure to control its odors. The report stated that "H2S odor was detected on Middle Road near Ardmore Avenue to Walnut Hill Street. H2S was also detected on the west side of the landfill on the perimeter road, and on the east side perimeter road." SCDES required that Defendant mitigate its on and offsite H2S odor on or before February 27, 2025.

o.  On February 27, 2025, an inspection by SCDES cited Defendant for failure to control its odors, detecting offsite odors "on Walnut Hill Road [] and Middle Road. And onsite on the haul road leading up to the disposal area." SCDES set a corrective action date of March 27, 2025, to mitigate H2S.

p.  On March 31, 2025, SCDES cited Defendant for failure to control its odors, detecting odor "on haul road."

q.  On June 10, 2025, SCDES cited Defendant for failure to control its odors, detecting odor "on Middle Road."

r.  On October 8, 2025, SCDES cited Defendant for failure to control its odors.

s.  On October 22, 2025, SCDES cited Defendant for failure to control its odors. The inspection report indicated that "Some odor observed within landfill footprint, mainly on top of the fill and along side next to Stormwater pond. Odor observed along Middle Rd while leaving the site at 11am."

    t.   On November 12, 2025, SCDES cited Defendant for failure to control its odors. The inspection report indicated that "Odor observed on top of the landfill and on Middle Rd."

    u.   On December 17, 2025, SCDES cited Defendant for failure to control its odors. The inspection report indicated an "H2S smell on upper deck."

54.    Defendant's Landfill has repeatedly emitted objectionable noxious odors that have migrated outside the bounds of its property at concentrations sufficient to interfere with the comfortable use, enjoyment, and value of surrounding residential properties.

55.    The Landfill's odor emissions have caused negative impacts to its neighbors.

56.    Defendant has repeatedly been cited by regulators for failing to operate the Landfill in accordance with its duties as a landfill operator to control odors, and has been repeatedly found responsible for discharging odors into the surrounding community.

57.    Defendant's unreasonable odorous emissions are continuing; Defendant has failed to cease the noxious emissions, despite knowledge, and despite the emissions being abatable with reasonable care and diligence.

58.    The noxious odors emitted from the Landfill are offensive, would be offensive to a reasonable person of ordinary health and sensibilities, and have caused property damage, including by interfering with the ability of Plaintiffs and the Class to use and enjoy their homes and property and adversely impacting surrounding property values.

59.    Plaintiffs and the putative class are a limited subset of individuals in Beaufort County, and the proposed Class Area, that includes only owner/occupants and renters of residential property who live within the Class Area and fit within the Class Definition.

60.    The proposed Class Area is home to a wide range of commercial and recreational enterprises, including but not limited to retail trade, health care & social assistance, and education.

61.     Members of the public, including but not limited to business owners, employees, commuters, visitors, customers, clients, students, and patients, have experienced and been harmed by the fugitive noxious odors emitted from the Landfill into public spaces; however, unlike Plaintiffs and the putative class, members of the public who are outside of the Class Definition have not suffered damages of the same kind, in the form of adversely impacted property values and/or loss of use and enjoyment of their private property.

62.     The physical invasion of Plaintiffs' property and that of the Class by noxious odors has interfered with the use and enjoyment of those properties, resulting in adverse impacts on private residential property values.

63.     Defendant has long been on notice that its design, operation, and maintenance of the Landfill was causing off-site emission of odors and landfill gas into the surrounding residential community, as evidenced by the hundreds of odor complaints and repeated violations of its permit and applicable law.

64.     Defendant has also long been on notice that its lack of a landfill gas collection system to prevent massive quantities of landfill gas from escaping the Landfill as off-site fugitive emissions was adversely impacting the property rights of residents in the Class Area.

65.     After SCDES began monitoring hydrogen sulfide levels, Defendant was aware that alarming concentrations of hydrogen sulfide were being detected off-site, and correlated with the hundreds of complaints submitted by area residents.

66.     Despite Defendant's clear knowledge that its Landfill odor emissions were violating the property rights of its residential neighbors, and causing nuisance level off-site odors, Defendant continued operating the Landfill without an adequate landfill gas collection and disposal system, and continued operating in breach of its standard of care for following proper

landfilling practices. Defendant's knowing conduct under the circumstances was willful, wanton, and in reckless disregard for the property rights of Plaintiffs and the Class.

## CLASS ALLEGATIONS

### A.   Definition of the Class

67.   Plaintiffs bring this action individually and on behalf of all persons as the Court may determine to be appropriate for class certification, pursuant to Federal Rule of Civil Procedure 23. Plaintiffs seek to represent a Class of persons defined as:

> **All owner-occupants and renters of residential property residing within 2 miles of the Landfill at any time within the applicable statute of limitations.**

The definitional boundary is subject to modification as discovery will disclose the location of all persons properly included in the Class ("Class Members").  Plaintiffs reserve the right to propose one or more sub-classes if discovery reveals that such subclasses are appropriate.

68.   This case is properly maintainable as a class action pursuant to an in accordance with Federal Rule of Civil Procedure 23 in that:

    a.   The Class, which includes thousands of members, is so numerous that joinder of all members is impracticable;

    b.   There are substantial questions of law and fact common to the class including those set forth in greater particularity herein;

    c.   Questions of law and fact such as those enumerated below, which are all common to the class, predominate over any questions of law or fact affecting only individual members of the class;

    d.   A class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

    e.   The relief sought in this class action will effectively and efficiently provide relief to all members of the class;

    f.   There are no unusual difficulties foreseen in the management of this class action; and

g.   Plaintiff, whose claims are typical of those of the Class, through their experienced counsel, will zealously and adequately represent the Class.

**A.    Numerosity**

69.   Based on publicly available data, there are more than 2,000 residential properties within the proposed Class Area.

70.   The Class consists of thousands of members and therefore is so numerous that joinder is impracticable.

**B.    Commonality**

71.   Numerous common questions of law and fact predominate over any questions affecting individual Class Members, including, but not limited to the following:

a.   Whether and how Defendant unreasonably, negligently, and knowingly failed to reasonably construct, design, maintain, and operate the Landfill to prevent off-site odor emissions;

b.   Whether Defendant owed any duties to Plaintiffs;

c.   Which duties Defendant owed to Plaintiffs;

d.   Which steps Defendant has and has not taken in order to control the emission of noxious odors through the construction, maintenance and operation of its Landfill;

e.   Whether and how Defendant constructed, designed, operated, and/or maintained landfill gas collection system(s), or otherwise disposed of landfill gas;

f.   Whether and how Defendant constructed, designed, operated, and/or maintained leachate management systems to prevent fugitive odor emissions;

g.   Whether and how Defendant engaged in adequate covering practices to prevent fugitive odor emissions;

h.   Whether Defendant breached its duty and/or acted unreasonably in its landfilling practices, to prevent odors from migrating off-site into the surrounding residential community;

i.   Whether and to what extent the Landfill's noxious odors were dispersed over the Class Area;

j.      Whether it was reasonably foreseeable that Defendant's failure to properly construct, maintain and operate the Landfill would result in an invasion of Plaintiffs' property interests;

k.      Whether Defendant's emission of odors into the Class Area were substantial and unreasonable   and constitute a nuisance under an objective legal standard;

l.      Whether and to what degree Defendant's odor emissions caused adverse impacts on the value of Plaintiffs' property and similarly situated properties throughout the Class Area; and

m.      Whether Defendant's conduct in causing off-site odor emissions was willful, wanton, or in reckless disregard of the rights of Plaintiffs and the Class, such that punitive damages may be assessed;  and,

n.      The proper measure of damages incurred by Plaintiffs and the Class.

72.      The availability of common proof as to a limited subset of the above questions of law and fact may otherwise permit issue certification under Fed. R. Civ. P. 23(c)(4).

**C.      Typicality**

73.      Plaintiffs have the same interests in this matter as all the other members of the Class and their claims are typical of all members of the Class. If brought and prosecuted individually, the claims of each Class Member would require proof of many of the same material and substantive facts, utilize the same complex evidence including expert testimony, rely upon the same legal theories and seek the same type of relief.

74.      The claims of Plaintiffs and the other Class Members have a common cause and their damages in the form of adversely impacted property values and punitive relief are of the same type. The claims originate from the same failure of the Defendant to properly construct, design, repair, maintain, and operate the Landfill.

75.     Class Members have experienced similar harm to the Plaintiffs as a result of the invasion of their properties by Defendant's release of noxious odors causing damage to their properties.

**D.     Adequacy of Representation**

76.     Plaintiffs' claims are sufficiently aligned with the interests of the absent Class Members to ensure that the Class's claims will be prosecuted with diligence and care.

77.     Plaintiffs will fairly and adequately represent the interests of the Class and do not have interests adverse to the Class.

78.     Plaintiffs live in the Class Area and own or rent property that is subject to the recurring invasion of noxious odors originating from Defendant's Landfill.

79.     Plaintiffs have retained the services of counsel who are highly experienced in complex class action litigation and in particular class actions stemming from the offsite emission of noxious odors from landfills.

80.     Plaintiffs' counsel will vigorously prosecute this action and will otherwise protect and fairly and adequately represent Plaintiffs and all absent Class Members.

**E.     Class Treatment Is the Superior Method of Adjudication**

81.     A class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint because:

a.     Prosecution of separate actions by or against individual members of the Class would create an unnecessary risk of inconsistent or varying adjudication with respect to individual members of the Class, which may establish incompatible standards of conduct for the party opposing the Class;

b.     Adjudications with respect to individual members of the Class would be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests;

c.     The concentration of litigation of these claims in one action will achieve efficiency and promote judicial economy; and,

d.     The proposed class action is manageable.

82.     Further, class treatment of Plaintiffs' claims is appropriate and necessary to ensure that common relief is available to the Class and that Class Members can vindicate their rights in a single proceeding.

83.     Notice can be provided to members of the Class by U.S. Mail and/or publication.

### CAUSE OF ACTION I - PRIVATE NUISANCE

84.     The Plaintiffs restate the allegations of this Complaint as if fully restated herein.

85.     The Defendant owed, and continues to owe, a duty to the Plaintiffs and to the Class to take reasonable measures to prevent and abate the unreasonable interference with, and the invasion of, their private property interests.

86.     The noxious odors which entered the Plaintiffs' and Class's properties originated from the Landfill, which was improperly and unreasonably constructed, designed, maintained, and/or operated by the Defendant.

87.     The Plaintiffs and the Class utilize their properties as residences and reside within the Class Area.

88.     The noxious odors which entered the Plaintiffs' and Class's properties originated from the Defendant's Landfill, which is within the Class Area.

89.     By failing to reasonably design, operate, repair, and maintain the Landfill, the Defendant has caused a physical invasion of the Plaintiffs' and Class's properties by noxious odors on unusually frequent occasions that are too numerous to comprehensively list herein.

90.     The fugitive noxious odors invading the Plaintiffs' and Class's properties are indecent and offensive to individuals with ordinary sensibilities.

91.     Defendant's repeated and ongoing emission of odors into Plaintiffs' and the Class's

properties has caused a substantial and unreasonable interference with Plaintiffs' and the Class's use and enjoyment of their property.

92.     Defendant's lawful operation of the Landfill has been conducted in an unlawful and/or unreasonable manner so as to produce material injury and great annoyance and disruption to the lawful property rights of Plaintiffs and the Class.

93.     Defendant's unreasonable operation of the Landfill has caused nuisance conditions that constitute an injury to Plaintiffs' property rights.

94.     Defendant's physical invasion and interference with Plaintiffs' and the Class's lawful property rights have caused adverse impacts on the values of Plaintiffs' and the Class's private residential properties.

95.     The Plaintiffs' and Class's properties are situated in such proximity to the Defendant's Landfill as to constitute "neighboring" properties, in that they are near enough to be impacted by the perceptible effects of noxious odors emitted from the Landfill.

96.     By constructing and then failing to reasonably construct, operate, repair, and maintain its Landfill, the Defendant has wrongfully, willfully, negligently, and knowingly created a foreseeable risk of harm and caused an unreasonable invasion of the Plaintiffs' and Class's properties by noxious odors.

97.     The Defendant's nuisance is recurring and ongoing.

98.     The Defendant's nuisance is temporary in nature and abatable through reasonable care and diligence.

99.     By constructing and then failing to reasonably repair, maintain, and/or operate the Landfill, thereby causing noxious odors to physically invade the Plaintiffs' and Class's properties, the Defendant intentionally, knowingly, willfully, recklessly, and/or negligently created a nuisance that substantially and unreasonably interferes with the Plaintiffs' and Class's properties.

19

100.    The Defendant owed, and continues to owe, a duty to Plaintiffs and the putative Class to prevent and abate the unreasonable interference with the invasion of their private property interests. Defendant has breached this duty by failing to implement adequate landfill gas control systems, leachate control systems, adequate covering and lining practices, and by failing to establish and follow proper landfilling practices through its operation of the Landfill.

101.    As a result of the forgoing misconduct by the Defendant, the Plaintiffs and Class suffered, and continue to suffer, damages to their property rights as alleged herein.

102.    The Plaintiffs and Class Members did not consent to the invasion of their properties by the Defendant's fugitive noxious odors, which is ongoing and constitutes a nuisance.

103.    Any social utility that is provided by the Landfill is patently outweighed by the harm suffered by the Plaintiffs and the Class, who have on frequent occasions been deprived of the full use and enjoyment of their properties and have endured substantial loss in the use and value of their properties.

104.    With full knowledge over an extended period of time that the Landfill was causing nuisance level odor emissions, as reported through hundreds of complaints from the community, confirmed by independent regulatory agencies, and measured through off-site hydrogen sulfide monitoring, Defendant continued operating the Landfill without an adequate landfill gas collection system, leachate management system, landfill covering and lining practices, and in violation of its standard of care for engaging in reasonable landfilling practices.

105.    Defendant's conduct was willful, wanton, and in reckless disregard for the property rights of Plaintiffs and the Class, entitling Plaintiffs and the Class to an award of punitive damages.

106.    The Defendant's substantial and unreasonable interference with the Plaintiffs' and Class's use and enjoyment of their properties constitutes a private nuisance under an objective legal standard. The Defendant is liable for all recoverable damages arising from such nuisance,

including compensatory relief for adverse impacts on property values, injunctive relief not inconsistent with Defendant's state and federal regulatory obligations, exemplary, and/or punitive relief as determined by the trier of fact.

## CAUSE OF ACTION II - PUBLIC NUISANCE

107.     The Plaintiffs restate the allegations of this Complaint as if fully restated herein.

108.     The Plaintiffs and the Class utilize their properties as residences and reside within the Class Area.

109.     The noxious odors which entered the Plaintiffs' and Class's properties originated from the Defendant's Landfill, which is within the Class Area.

110.     By failing to reasonably design, operate, repair, and maintain the Landfill, the Defendant has caused a physical invasion of the Plaintiffs' and Class's properties by noxious odors on unusually frequent occasions that are too numerous to comprehensively list herein.

111.     The noxious odors that invade the Plaintiffs' and Class's properties are indecent and offensive to the Plaintiffs and Class, and they are indecent and offensive to individuals with ordinary sensibilities.

112.     Defendant's repeated and ongoing emission of odors into Plaintiffs' and the Class's properties has caused a substantial and unreasonable interference with Plaintiffs' and the Class's use and enjoyment of their property, causing adverse impacts on the value of Plaintiffs' and the Class's property values.

113.     Defendant's lawful operation of the Landfill has been conducted in an unlawful and/or unreasonable manner so as to produce material injury and great annoyance and disruption to the lawful property rights of Plaintiffs and the Class.

114.     Defendant's unreasonable operation of the Landfill has caused nuisance conditions that constitute an injury to Plaintiffs' property rights.

115.    Defendant's physical invasion and interference with Plaintiffs' and the Class's lawful property rights have caused adverse impacts on the values of Plaintiffs' and the Class's private residential properties.

116.    The noxious odors substantially and unreasonably interfere with the Plaintiffs' and Class's enjoyment of life and their ability to use and enjoy their properties.

117.    Separate and apart from the private property damage incurred by the Plaintiffs and the Class, the Defendant's emissions have substantially interfered with rights common to the general public, including the right to breathe clean air.

118.    Due to the Defendant's Landfill emissions, the Plaintiffs and the Class have suffered, and continue to suffer, special harm relating to the use and enjoyment of their lands and properties, and negative impacts on property values—rights that are not shared by members of the general public.

119.    The injuries to the Plaintiffs' and Class's properties and the harmed rights associated with those properties are different in kind from the harm caused by the Defendant to the public at-large and/or other private individuals not within the Class definition, who do not have the right to Plaintiffs' use or value of private residential property.

120.    As a foreseeable, direct, and proximate result of the forgoing misconduct by the Defendant, the Plaintiffs and the Class have suffered special damages to their properties as alleged herein.

121.    The damages suffered by the Plaintiffs and Class are uniquely injurious to Plaintiffs and the Class because they suffer harm relating to the use and enjoyment of their land and property, and property values, which are different in kind and not suffered by the general public.

122.    The general public is also impacted by the Landfill's noxious odors when they work, study, commute, shop, or engage in recreation in the Class Area, but they suffer no harm to

the use and enjoyment of their land or property, or to  private residential property values.

123.    The fugitive noxious odors emitted by the Defendant's Landfill have been, and continue to be, unreasonably dispersed across public and private land throughout the Class Area.

124.    The Plaintiffs and Class Members did not consent to the invasion of their properties by the Defendant's fugitive noxious odors, which is ongoing and constitutes a nuisance.

125.    The Defendant's nuisance is recurring and ongoing.

126.    The Defendant's nuisance is temporary in nature and abatable with reasonable care and diligence.

127.    By failing to reasonably operate, repair, and/or maintain the Landfill so as to abate the nuisance odor conditions created by the Landfill, the Defendant has acted, and continues to act, intentionally, willfully, knowingly, recklessly, and/or negligently, and with conscious disregard for public health, safety, peace, comfort, and convenience.

128.    Any social utility that is provided by the Landfill is patently outweighed by the harm suffered by the Plaintiffs and the Class, who have on frequent occasions been deprived of the full use and enjoyment of their properties and have endured substantial loss in the use and value of their properties.

129.    With full knowledge over an extended period of time that the Landfill was causing nuisance level odor emissions, as reported through hundreds of complaints from the community, confirmed by independent regulatory agencies, and measured through off-site hydrogen sulfide monitoring, Defendant continued operating the Landfill without an adequate landfill gas collection system, leachate management system, landfill covering and lining practices, and in violation of its standard of care for engaging in reasonable landfilling practices.

130.    Defendant's conduct was willful, wanton, and in reckless disregard for the property rights of Plaintiffs and the Class, entitling Plaintiffs and the Class to an award of punitive damages.

131.     The Defendant's substantial and unreasonable interference with the Plaintiffs' and Class's use and enjoyment of their properties constitutes a public nuisance, from which Plaintiffs have suffered damages different in kind from that of the general public. The Defendant is liable for all recoverable damages arising from such public nuisance, including compensatory relief for adverse impacts on property values, injunctive relief not inconsistent with Defendant's state and federal regulatory obligations, exemplary, and/or punitive relief as determined by the trier of fact.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs, individually and on behalf of the proposed Class, pray for judgment as follows:

A.  Certification of the proposed Class by order pursuant to Fed. R. Civ. P. 23;

B.  Designation of the Plaintiffs as representatives of the proposed Class and designation of their counsel as Class Counsel;

C.  Judgment in favor of the Plaintiffs and the Class Members as against the Defendant for each cause of action stated herein;

D.  An award to the Plaintiffs and the Class Members for compensatory and punitive damages, including pre- and post-judgement interest;

E.  An award of attorneys' fees and costs, including pre- and post-judgement interest as allowable by law;

F.  An Order holding that the entrance of the aforementioned noxious odors upon the Plaintiffs' and Class's properties constitutes a nuisance;

G.  An Order holding that Defendant was negligent and/or unreasonable in causing noxious odors to repeatedly invade and interfere with the Plaintiffs' and the Class's private residential properties;

H.  An award to the Plaintiffs and the Class Members for injunctive relief not inconsistent with the Defendant's state and federal regulatory obligations; and

I.  Such further relief, both general and specific, that this Honorable Court deems just and proper.

## JURY DEMAND

The Plaintiffs respectfully demand a trial by jury on all issues raised in this Complaint, pursuant to Fed. R. Civ. P. 38.


Date: <u>March 9, 2026</u>                                   Respectfully submitted,


                                                            <u>*/s/ Joel C. Hynes*</u>
                                                            Joel C. Hynes
                                                            **HYNES LAW, PC**
                                                            498 McAlister Dr.
                                                            Little River, SC 29566
                                                            T: (810) 533-6296
                                                            E: joelhynes@hyneslawpc.com
                                                            *Attorney for the Plaintiffs*

                                                            Steven D. Liddle*
                                                            Laura L. Sheets*
                                                            Matthew Z. Robb*
                                                            **LIDDLE SHEETS P.C.**
                                                            975 E. Jefferson Ave.
                                                            Detroit, MI  48207
                                                            (313) 392-0015
                                                            sliddle@lsclassaction.com
                                                            lsheets@lsclassaction.com
                                                            mrobb@lsclassaction.com
                                                            *Pro Hac Vice Motions to be
                                                            submitted*

                                                            *Attorneys for Plaintiffs*